STATE OF CONNECTICUT *v.* LEONARD DEDRICK
(8417)

DALY, NORCOTT and FOTI, Js.

Argued February 15—decision released April 30, 1991

*Stephen V. Moran,* assistant public defender, for the
appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with
whom, on the brief, were *Donald A. Browne,* state's
attorney, and *John Smriga* and *Frederick W. Fawcett,*
assistant state's attorneys, for the appellee (state).

FOTI, J. The defendant appeals from the judgment
of conviction, rendered after a jury trial, of robbery
in the first degree in violation of General Statutes

§ 53a-134 (a) (3), and of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The defendant claims that the trial court improperly (1) denied his motion to strike certain testimony, and (2) failed to give the jury a requested lesser included offense instruction with respect to the charge of robbery in the first degree. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On October 13, 1988, at approximately 5:35 a.m., Gerald Grant left his home and went to a twenty-four hour convenience store to purchase cigarettes. After leaving the store he was approached by the defendant, who attempted to sell him a white substance contained in a small glass bottle. When Grant refused, three other individuals approached and grabbed and struck him, causing him to lose consciousness. As he regained consciousness, he was aware of someone going through his pockets. He was then thrown to the ground and kicked twice by the defendant. Someone other than the defendant told Grant to "give him the money and he'll stop beating you." Grant was then picked up and placed across a car, where the defendant put a knife to Grant's throat and threatened to cut Grant's throat if he did not give him money. Grant then reached into his pocket and gave the defendant between $260 and $270.

After being denied the use of the telephone at the store, Grant used a phone booth near the store to call 911 to summon the police. After their arrival, the police brought Grant to a street a few blocks away, where he identified the defendant.

The defendant challenges the court's failure to strike Grant's testimony because the police erased the tape of his emergency 911 call. The following facts are relevant to this claim. During the direct examination of

Grant, the defendant, in the absence of the jury, requested that Grant's testimony be stricken, citing *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815 (1988), aff'd, 212 Conn. 6, 562 A.2d 470 (1989),[1] and representing that a 911 tape of Grant's call to the police had been erased. The court denied the motion. Subsequently, during a hearing on a motion to suppress identification the issue again arose and the defendant asserted that he had subpoenaed the records of Grant's calls to the police and had been informed that, as a matter of routine policy, the tape had been erased sixty days after the call. Without further offer, the defendant, again citing *Williamson,* moved to strike Grant's testimony. The court informed the defendant's counsel that a record had to be developed on which to predicate a ruling, and that oral statements of counsel did not constitute evidence. The issue was not raised again until after the verdict when, for the first time, the defendant filed a written motion to strike Grant's testimony. A hearing was held and the defendant examined his first and only witness, Sergeant Robert Lomax, supervisor of the communications division of the Bridgeport police department. Lomax testified that the tape of the 911 call had been destroyed after sixty days, that normally such tapes are held for thirty to sixty days for purposes of inquiries and that then the tapes are reused. He did, however, have a copy of the complaint dispatch, which is a nonverbatim record of the Grant phone call. The transcription indicated that the victim had been robbed by five black males who were on the corner of Fifth Street and Stratford Avenue, that one was wearing a green army jacket, two had black jackets and one a gray hooded shirt. The complainant was to be met in front of Faces Cafe. The court denied the defendant's motion to strike.

---

[1] *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815 (1988), decided April 12, 1988, and affirmed subsequent to the completion of this trial, 212 Conn. 6, 562 A.2d 470 (1989).

Although the record may be far from ideal, it is not so inadequate that we will not accept the review of this proffered issue.

The state concedes that the tape of the 911 emergency call constituted a "statement" within the definition provided by Practice Book § 749 (2).[2] *State* v. *Williamson*, supra, 14 Conn. App. 112–13. The defendant concedes that the tape was not destroyed in bad faith, or by deliberate act done with intent to deprive the defense of information; see *State* v. *Santangelo*, 205 Conn. 578, 587, 534 A.2d 1175 (1987); but rather by intentional nonpreservation. See *State* v. *Williamson*, supra, 212 Conn. 16. Our Supreme Court has recently stated the law regarding such destruction. " '[I]f a case involves intentional, but not bad faith, destruction of the statement of a state's witness, an automatic sanction of striking that witness' testimony is not required. . . .' *State* v. *Johnson*, 214 Conn. 161, 168, 571 A.2d 79 (1990). Rather, under such circumstances, 'it is appropriate that the court weigh " 'the culpability of the state for its failure to make disclosable material available on the one hand, against any resulting prejudice to the defendant on the other. . . .' " This approach gives broad discretion to the trial court. . . . Where . . . the destruction of a witness' statement, although not in bad faith, is deliberate, the state properly bears the burden of establishing harmlessness. . . . "[T]he proper harmless error inquiry is whether the result of the trial may have been different had the state not violated the rule." . . .' " (Citations omitted.) *State* v. *Belle,* 215 Conn. 257, 268, 576 A.2d 139 (1990).

---

[2] Practice Book § 749 (2) provides: "The term 'statement' as used in Sec. 748 means . . . (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

Our careful review of the record indicates that the state has sustained its burden of establishing harmlessness. On the particular circumstances of this case, because the defendant is not claiming that his ability to cross-examine Grant was affected by the tape's destruction, there is no claimed violation of the confrontation clause of the sixth amendment, and, therefore, the state need not prove harmlessness beyond a reasonable doubt. See *State* v. *Belle,* supra, 271–72; *State* v. *Johnson,* supra, 173–74; see also *In re Jesus C.,* 21 Conn. App. 645, 575 A.2d 1031 (1990). Although a violation of the defendant's right to discovery did occur when the tape was destroyed, the impact of that violation was lessened due to the existence of the complaint report that was available to the defendant. The substance of the statements on the tape was the time of the incident, the number and the descriptions of the assailants, where Grant could meet the police and where the assailants could be found. This information is highly relevant to the issue of whether the defendant was among the assailants. That issue, however, was not in controversy at trial. The defendant himself established by testimony that he was present at the crime scene. The main issue contested at the trial was whether the defendant robbed Grant at knife point, or merely attempted to convince Grant to pay the other four assailants to stop the beating. The reconstructed information did not mention the location of the robbery but rather where Grant could be met by the police and where the five black males who robbed him were. The time of the incident and the description of the clothes worn by the assailants were not changed and were consistent with Grant's trial testimony. The number of attackers reported was not truly consequential under the circumstances, because the defense was dependent on what happened factually and not on how many people were present and participat-

ing. The crucial question at trial was the role played by the defendant, not the number of people involved or the clothing worn by any individual. The record does not support a claim that the erased tape would have played any significant role in this trial. Both the testimony of Lomax and the transcription of the "911" call were available to the defendant at trial, and neither appears to have been of any substantive value to the defendant. The tape itself, therefore, could not be deemed to be of critical importance. Under the circumstances as described we conclude that the trial court did not abuse its broad discretion in refusing to strike the testimony of Grant.

The defendant also challenges the trial court's refusal to instruct the jury, as requested, on robbery in the third degree as a lesser included offense of robbery in the first degree.

To be entitled to a charge on a lesser included offense, a defendant must show that he has complied with the four conditions stated in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980): "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Edwards,* 214 Conn. 57, 62–63, 570 A.2d 193 (1990). The state claims that the defendant has not satisfied the first and fourth conditions of the *Whistnant* test.

The standards for the first prong of *Whistnant* were articulated by our Supreme Court in *State* v. *McIntosh,* 199 Conn. 155, 158–61, 506 A.2d 104 (1986). The requirement that the defendant request an appropriate instruction means that the request must be in compliance with Practice Book § 854, the pertinent portion of which states that requests "shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.*" (Emphasis added.) See *State* v. *McIntosh,* supra, 158–59.

In the present case, the defendant's request to charge did not adequately comply with our rules of practice. It contained no facts at all, let alone " 'a complete statement of the essential facts as would have justified the court in charging in the form requested.' " *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984). Having so concluded, we need not consider the second, third or fourth prongs of the *Whistnant* test. The trial court properly refused to grant the defendant's request to instruct the jury on the elements of robbery in the third degree, General Statutes § 53a-136, as a lesser included offense of the crime charged.

The judgment is affirmed.

In this opinion the other judges concurred.