STATE OF CONNECTICUT *v.* ANDREW L. OWENS
(7073)
(7074)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued March 28—decision released July 9, 1991

*Suzanne H. Werner,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and carrying a weapon in a motor vehicle in violation of General Statutes § 29-38. The defendant claims that the trial court (1) improperly instructed the jury, and (2) allowed extraneous facts to be presented to the jury that prevented it from fairly reviewing the relevant evidence. The defendant also claims that he has been deprived of meaningful appellate review of certain pretrial events because of the loss of the court reporter's notes and the inadequate efforts to reconstruct the record. We affirm the judgments of the trial court.

The jury could reasonably have found the following facts. On June 10, 1987, the defendant and other individuals accompanied Connie Sheppard, his girl friend's sister, to Thrifty Rent-A-Car in Danbury, where Sheppard rented a maroon Chrysler New Yorker using a credit card. The rental agreement called for the return of the automobile after one week. Sheppard used the

car, and on June 17 the defendant asked to borrow it for a few minutes to go to a store. The car was not returned and after four days she notified the rental agency and the Danbury police.

Acting on a separate complaint, officers of the Stratford police department apprehended the defendant for questioning and he denied knowing Sheppard or anything about the car. The defendant had been seen in the stolen vehicle by Audrey Hodgkins who later supplied information to the police that led them to a hotel in Milford. When the police arrived at the hotel, they did not find the stolen vehicle, but they did confirm that the vehicle had been there and that the defendant had checked out. Hodgkins then told police that the car was being taken to New Haven to be stripped because it was too hot in the Bridgeport area. Subsequently, the car was observed being driven in New Haven by Jean Johnson. Johnson became acquainted with the defendant when she exchanged cars with him at the request of Tyrone Harden. The defendant drove away with Harden in Johnson's Subaru, and left the Chrysler for her to use. Approximately two days later, the two approached Johnson again and asked her to rent a room for them at the Howard Johnson hotel in New Haven. She rented a room for them in her name and gave the keys to Harden.

When the police went to the Howard Johnson's hotel, they found neither the defendant nor the Subaru. Approximately three hours later, at 5 a.m., on July 19, 1987, the officers returned, saw the parked Subaru, and went to the room that had been rented by Johnson. The defendant was arrested for larceny in the first degree and denied being Andrew Owens, supplying the police with several aliases.

While securing the Subaru in preparation for towing, a police officer observed a bullet on the rear floor

of the car. After finding that the car's exhaust pipe was still hot, they opened the car and found two loaded weapons: a .44 caliber magnum protruding from under the driver's side floor mat, and a .38 caliber revolver concealed underneath the passenger's side of the front seat. The .44 caliber contained six live and two spent rounds. The .38 caliber contained four live and two spent rounds. Both revolvers were fully operable. There had been no weapons in the Subaru when Johnson lent it to the defendant.

Meanwhile, a search of the Chrysler revealed a number of live bullets in the trunk of the vehicle, including nine .44 caliber super magnums and six .38 caliber rounds, which were the same type of bullets in the handguns found in the Subaru.

## I

The defendant claims that the trial court improperly instructed the jury in four ways: (1) in refusing to charge the jury as to the lesser included offense of using a motor vehicle without the owner's permission; (2) in its instruction regarding the elements of the crime of carrying a weapon in a motor vehicle; (3) in its instructions as to consciousness of guilt; and (4) in failing to instruct the jury that as a matter of law there was insufficient evidence presented to convict the defendant of carrying a weapon in a motor vehicle.

## A

The defendant claims that the court should not have refused to instruct on the offense of using a motor vehicle without the owner's permission, General Statutes § 53a-119b, as a lesser included offense of first degree larceny.

Although the defendant did file a written request to charge, he did not set forth, as required, a complete statement of the essential facts, or any facts what-

soever, that would justify the court's charging in the form requested. Practice Book § 854; *State* v. *Dedrick,* 24 Conn. App. 518, 523–24, 589 A.2d 1241 (1991). Accordingly, we conclude that the trial court properly refused to instruct on the lesser included offense.

In order to be entitled to a charge on a lesser included offense, a defendant must show that he has complied with the four conditions stated in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). "The standards for the first prong of *Whistnant* were articulated by our Supreme Court in *State* v. *McIntosh,* 199 Conn. 155, 158–61, 506 A.2d 104 (1986). The requirement that the defendant request an appropriate instruction means that the request must be in compliance with Practice Book § 854, the pertinent portion of which states that " 'requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.*' (Emphasis added.)" *State* v. *Dedrick,* supra, 524. A complete statement of the facts is required; *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984); a request to charge that does not conform to the requirements of Practice Book § 854 and *State* v. *Whistnant,* supra, need not be given. *State* v. *Payne,* 14 Conn. App. 169, 171, 540 A.2d 87 (1988).

In view of our conclusion regarding the defendant's request to charge, we will not consider the merits of his claim that using a motor vehicle without the permission of the owner is a lesser included offense of larceny in the first degree.[1]

---

[1] The defendant concedes that his request to charge was "technically" insufficient but argues that it complied with the "spirit" of the law which should allow us to reach the merits of his claim. While not required to so do, we note that one may commit the offense of first degree larceny of a motor vehicle without having first used or operated that vehicle. *State* v. *Corrolla,* 113 Conn. 103, 154 A. 153 (1931).

## B

The defendant next claims that the court incorrectly instructed the jury as to the elements of knowledge and possession necessary for a conviction for knowing possession of an unregistered weapon in a motor vehicle.[2]

"To determine whether an error in the charge to the jury exists, we review the entire charge to determine if, 'taken as a whole, the charge adequately guided the jury to a correct verdict.' *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986) . . . ." (Citations omitted.) *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989). In appeals involving a constitutional question, the standard of review is whether it is reasonably possible that the jury was misled. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982).

There are four elements that the state must prove in a prosecution for a violation of General Statutes § 29-38: (1) that the defendant owned, operated or accepted the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no permit or registration for the weapon. *State* v. *Delossantos,* 211 Conn. 258, 273, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). The defendant claims that the trial court improperly instructed the jury as

---

[2] The defendant did not object to this instruction at trial and raises this claim for the first time on appeal. He contends that his claim meets the criteria of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), as refined by *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We agree with the defendant that the record is adequate for review and that his claim that the trial court failed to instruct the jury adequately on the elements of a crime is of constitutional magnitude alleging the violation of a fundamental right. *State* v. *Golding,* supra. Therefore, we will proceed to examine his claim to determine whether the alleged violation clearly exists and clearly deprived the defendant of a fair trial.

to elements two and three of the offense, having a weapon and having knowledge of its presence. He alleges that the court gave an overly expansive definition of having a weapon without instructing the jury as to the necessity of some form of control, and permitted the jury to draw improper inferences from the defendant's mere presence in the motor vehicle.[3] We do not agree.

The clear intent of § 29-38 is to make it a crime to have a weapon in a motor vehicle, and "[t]he statute

---

[3] The trial court instructed in relevant part as follows: "The word 'has' as it appears in the statute and particularly in the phrase 'knowingly has' has no technical meaning. It is a word used by you in common speech and should be so considered. However, I should point out to you what the word does not mean. The word 'has' as it's used in this statute does not mean that one must have the weapon upon his person or even within his reach. The word 'has' has little to do with the concept of physical possession because under the statute a jury can find that a person has a weapon in a vehicle even when the weapon is owned by or even in the physical possession of another occupant of the vehicle.

"However, having said that, I wish to remind you that the statute pertains only to a person who 'knowingly has,' which means is aware of, the weapon in the vehicle. Accordingly, in order to find the defendant guilty of this charge, you must find not only that the weapon was in the vehicle but also that the defendant was aware of its existence within the vehicle and also that he occupied or operated a vehicle.

"Now, on the other hand, in order to find the defendant guilty, you need not find that the defendant was in actual possession of the weapon or that he was the owner or initial carrier of the weapon. The question you should ask yourselves is this. Was the defendant aware of the fact that the weapon was in the vehicle?"

The court later instructed as to possible inferences that could be drawn from the evidence presented: "One possible inference to which I would call your attention is if you find that the pistol was in the vehicle, then under our law from the presence of the pistol in the car you may draw an inference, if your common sense tells you such an inference would be reasonable and logical in light of the other evidence in the case, you may infer that each occupant of the car, including the defendant, quote, knowingly had, unquote, the pistol in the car, although neither this inference nor any other inference is required. It may be drawn if and when common sense is applied and is reasonable and logical."

is not concerned with possession or ownership of a weapon, but rather aims to penalize those who know that there is a weapon inside a motor vehicle." *State* v. *Mebane,* 17 Conn. App. 243, 246, 551 A.2d 1268, cert. denied, 210 Conn. 811, 556 A.2d 609, cert. denied, 492 U.S. 919, 109 S. Ct. 3245, 106 L. Ed. 2d 591 (1989). The defendant argues that the court did not adequately define the word "has" and should have instructed that it means having control. Because the state is not required to prove either actual or constructive possession; id., 245; it certainly is not required to prove control.

The defendant also claims that the court's instruction as to the knowledge element of the offense was incorrect.[4] The defendant relies on *State* v. *Watson,* 165

---

[4] The court instructed in relevant part as follows: "The first phrase is 'knowingly has.' As applied in this case the word 'knowingly' is defined as follows. A person acts knowingly with respect to a circumstance described by a statute defining an offense when he is aware that such circumstance exists.

"The key word in this definition is the word 'aware' because in essence a person acts knowingly with regard to something when he is aware that something exists. . . . [T]he statute pertains only to a person who knowingly has, which means is aware of, the weapon in the vehicle. Accordingly, in order to find the defendant guilty of this charge, you must find not only that the weapon was in the vehicle but also that the defendant was aware of its existence within the vehicle . . . . The question you should ask yourselves is this. Was the defendant aware of the fact that the weapon was in the vehicle? In resolving this question you should consider all the evidence that you have before you and any and all reasonable and logical inferences which you may draw from the evidence.

"Now, earlier in my instructions I commented upon your right as a jury to draw inferences from the evidence. I gave you some instruction on what circumstantial evidence is. Accordingly, in determining whether the defendant, quote, knowingly has, unquote, the weapon in the motor vehicle, you are entitled to draw reasonable and logical inferences from the evidence that is before you.

"One possible inference to which I would call your attention is if you find that the pistol was in the vehicle, then under our law from the presence of the pistol in the car you may draw an inference, if your common sense tells you such an inference would be reasonable and logical in light of the other evidence in the case you may infer that . . . the defendant, quote,

Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). In *Watson,* our Supreme Court held that it was unconstitutional for the legislature to enact a provision making the mere presence of a weapon in a vehicle prima facie evidence of a violation by each occupant. The defendant argues that the court's jury instructions in this case permitted the same inference that was struck down in *Watson*—that merely because the defendant was in the car, he knew about the weapons.

An examination of the charge shows that the court gave a thorough definition of knowledge and twice cautioned the jury to consider not only the presence of the weapon but the entirety of the evidence presented. The court also instructed that the inference was merely permissive and not mandatory. The instruction gave adequate guidance to the jury to allow its finding of intent to be based on all of the evidence rather than merely the presence of the guns in the vehicle. We conclude, therefore, that the court's charge fulfilled the mandate to " 'be accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict.' " *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980).

Viewing the charge as a whole, we conclude that it is not reasonably possible that the trial court misled the jury. The trial court correctly charged the jury on the essential elements of the offense of having a weapon in a motor vehicle.

## C

The defendant next contends that the trial court deprived him of his right to a fair trial because of preju-

knowingly had, unquote, the pistol in the car, although neither this inference nor any other inference is required. It may be drawn if and when common sense is applied and is reasonable and logical."

dicial instructions on the issue of consciousness of guilt.[5] It is the defendant's position that the effect of the court's having given specific examples of the defendant's inconsistent statements prejudiced him so greatly that the jury could not fairly consider the evidence, and that this constituted an abuse of discretion.

[5] The court instructed in relevant part as follows: "There is a concept in our law called consciousness of guilt or guilty conscience. Whenever any person is on trial for a criminal offense, it is proper to show his conduct, as well as any declarations made by him subsequent to the alleged criminal act.

"The manner in which he conducted himself when accounts by others in respect to this subject were made in his hearing may always be shown. If he should be in possession of or should attempt to conceal anything acquired by the crime, or if he should make false statements respecting himself or as to his whereabouts at the time of the affair, these may be shown, because such conduct or such statements often tend to show a guilty connection by the accused with the crime charged.

"In other words, from any statements made by the accused subsequent to the alleged criminal act which are shown to be false, you may fairly infer guilty knowledge influenced by the criminal act itself.

"Now, the state claims in this case that the defendant lied to Corporal Halpin and to Officer Loschiavo about his knowledge of Connie Sheppard up in Danbury and that he lied when he said he did not have any knowledge of any 1987 Chrysler automobile. They also claim that he lied to Jean Johnson when he told her that he owned and had paid for the Chrysler at the time it was exchanged for her Subaru.

"Now, if you find—of course, the defendant in his testimony denied saying the things to those people that I just referred to—if you should find that the defendant did lie as claimed by the state, then you may properly infer that these statements were borne of a guilty mind since they tended to absolve the accused of involvement until they were shown to be false. Such statements, when shown to be false, are circumstantial evidence of guilty conscience and have independent probative force."

The court later cautioned the jury: "Now, if I refer to any evidence, and I will refer to some, but not all of it, it's only for the purpose of clarification of some point of law or a point of illustration or to refresh your recollection as to the general nature of the testimony. You are not to understand that I intend to emphasize any evidence I mention or limit your consideration to it. If I omit any evidence, and I will omit most of the evidence, most of the evidence I will not refer to, you will supply the evidence that I don't mention from your own recollection. If I should incorrectly state any evidence you will correct my error because it is your province to review the evidence and determine what facts are established by the evidence."

It is axiomatic that a court may, in submitting a case to the jury, exercise its discretion in calling the attention of the jury to the evidence, lack of evidence, bearing on any point of evidence in issue, and may comment on the weight of the evidence, but may not direct or advise the jury how to decide the matter. The instruction should not be examined in a vacuum, but in the context of the factual issues raised at trial. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

A review of the entire challenged instruction reveals that the court simply specified those instances in which the state claimed that the defendant knowingly made false statements, but did not comment as to the weight of the evidence. The court also noted that the defendant denied making such statements. The court also clearly instructed that it was the jury's recollection of the evidence that controlled, and that the court was not emphasizing any particular testimony. The court did not advise the jury how to resolve any issue in the case, and its instructions adequately presented the case to the jury. Viewing the charge as a whole, and considering it from the standpoint of its probable effect on the jurors in guiding them to a proper verdict in the case; *State* v. *Anderson,* 16 Conn. App. 346, 356, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988); we conclude that the court did not abuse its discretion and that no injustice was done.

## D

The defendant claims that the court improperly refused or failed to instruct the jury that as a matter of law there was insufficient evidence that the defendant knowingly possessed the weapons in the car, and also wrongfully denied his motions for judgment of acquittal.[6]

---

[6] We will treat this claim as one of insufficiency of evidence.

The issue of sufficiency of evidence and its appropriate standard of review is well established. The issue is whether, on the facts established and the reasonable inferences drawn therefrom, the jury could have reasonably concluded that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Carpenter,* 19 Conn. App. 48, 59, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). We construe the evidence in a light most favorable to sustaining the verdict. *State* v. *Iovieno,* 14 Conn. App. 710, 713, 543 A.2d 766 (1988).

It is within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Ruth,* 16 Conn. App. 148, 154, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989).

It is not unreasonable for the jury to have found that the defendant had been in the Subaru and that a .44 caliber bullet was clearly in view on the rear floor. The jury could have inferred that he was able to see the .44 magnum revolver protruding from under the driver's side floor mat and was able to feel one or both of the weapons under the front floor mats. The jury could also have inferred from the evidence presented that the bullets found in the Chrysler were his because they were the same type as those found in the weapons in the Subaru.

There was ample evidence from which the jury could infer that the defendant knowingly possessed a weapon in that motor vehicle.

II

The defendant seeks a reversal of the conviction because he claims that extraneous facts presented to the jury prevented it from fairly reviewing the relevant evidence. He claims that the extraneous facts resulted from a consolidation of the defendant's two files for

trial, the admission of alleged highly inflammatory evidence, and the prosecutor's improper references to that evidence.

## A

The defendant first claims that the trial court improperly granted the state's motion to consolidate the two informations pending against him.

On December 21, 1987, the state filed and was granted a motion to consolidate for trial two files against the defendant. The first file charged larceny in the first degree dealing with allegations regarding the Chrysler, and the second file charged the weapon in a motor vehicle offense plus several drug offenses.

General Statutes § 54-57 and Practice Book § 829 expressly authorize a trial court to order a defendant to be tried jointly on charges arising separately. The court enjoys broad discretion which, absent manifest abuse, an appellate court may not disturb. *State* v. *Greene,* 209 Conn. 458, 463, 551 A.2d 1231 (1988).

" 'The defendant bears a heavy burden of showing that " '[the granting of the motion for joinder] resulted in substantial injustice,' and that any resulting prejudice was 'beyond the curative power of the court's instructions.' " . . .' " *State* v. *Jennings,* 216 Conn. 647, 657, 583 A.2d 915 (1990).

A trial court should consider several factors in determining whether severance is required including (1) whether the charges involved discrete, easily distinguishable factual scenarios, (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part, and (3) the duration and complexity of the trial. *State* v. *Boscarino,* 204 Conn. 714, 722–23, 529 A.2d 1260 (1987). "If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any

prejudice that might have occurred." *State* v. *Jennings,* supra, 658. The test to be applied is whether substantial injustice will result if the charges are tried together. *State* v. *Banta,* 15 Conn. App. 161, 167, 544 A.2d 1226, cert. denied, 209 Conn. 815, 816, 550 A.2d 1086 (1988). Applying these factors to the present case, we conclude that joinder or consolidation of the two files did not result in substantial injustice.

The defendant concedes that the crimes charged were not similar and, therefore, easily distinguishable and that they were not of a shocking or violent nature. As to the third factor, the record discloses that the jury heard evidence for less than three days. The state's evidence was not complex and was presented in an orderly manner.

Although the defendant did not file a request to charge directed to guiding the jury, the court in its final instructions twice cautioned the jurors that there were two separate criminal charges, and that, while there was only one trial, they were required to render a verdict on each individually or separately and that "each charge stands by itself."

We conclude that the trial court gave adequate consideration to the potential for prejudice caused by the joinder of the two informations, and that the defendant has failed to meet his heavy burden of demonstrating that substantial prejudice resulted from the joinder.

B

The defendant's next claim is that he was deprived of a fair trial by the court's failure to hold a hearing on his motion to suppress before trial and by its ambiguous explanation to the jury of the dismissal of the drug charges.

On August 14, 1987, the defendant filed a motion to suppress evidence concerning the search of the hotel

room where he was arrested. On September 2, 1987, the court, *Ronan, J.*, acting on that and other motions, ordered it heard at the time of trial along with three other motions to suppress and two unrelated motions. The jury was impanelled and trial commenced on January 7, 1988. The record is silent as to the other five motions, but as to this motion to suppress, the defendant made no request to be heard prior to jury selection or the taking of evidence. The court read to the jury five pending charges which included the three drug counts. Limited testimony was later admitted, without objection, on the drug charges, with the defendant eliciting some of such evidence.

On January 11, 1988, after a hearing in the absence of the jury, the court granted the defendant's motion to suppress and subsequently dismissed the drug charges. The court then informed counsel that it would explain to the jurors that those three drug counts were no longer before them. Upon the jury's return, the court stated: "For reasons that [are] not necessary to get into with the jury, the three narcotics charges are no longer pending in this proceeding. Therefore, this trial will concern itself with the charge in one case of carrying a dangerous weapon in a motor vehicle and in the other case with the charge of larceny in the first degree . . . . So, this case is concerned now with two criminal charges, not five. Just two."

The defendant acknowledges that he does not know why his motion to suppress evidence was heard almost a full day into trial, and that he did not seek to have it heard sooner, even though its disposition could affect the underlying charges dealing with narcotics violations. He also acknowledges that he never asked that the trial court inform the jury that the charges had been dismissed rather than merely no longer pending in this proceeding. Further, the defendant did not object at any time, nor request any additional explanation to the jury.

Although the defendant made no objection to either the claimed delay in the court's action on his motion to suppress or to the court's explanation and instruction to the jury, he now claims the issue is constitutional and should be reviewed under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

The issue raised by the defendant is not of constitutional magnitude. Neither the timing of the hearing of the defendant's motion to suppress, nor the trial court's statement that the narcotics charges were no longer pending violated the defendant's fundamental constitutional rights. This court will not review unpreserved claims unless the claim is of constitutional magnitude alleging the violation of a fundamental constitutional right. See *State* v. *Golding,* supra; *State* v. *Burroughs,* 22 Conn. App. 507, 512, 578 A.2d 146 (1990).

### C

The defendant next claims that the trial court abused its discretion by admitting evidence that the police were investigating the defendant in connection with a fatal traffic accident. This evidentiary claim was not preserved at trial and we will not review it.

### D

The defendant further claims that he was deprived of his constitutional right to a fair trial by the prosecutor's improper comment regarding a "hit and run fatality" during closing arguments, and therefore he is entitled to a new trial.

In final argument, the state, in recounting events, stated: "From Danbury, the story continues by going south. The story is picked up in Stratford. I believe you'll recall that [the Stratford police officer] testified, indicated that in early June he became involved in an

investigation regarding a hit and run fatality in his town, that the investigation led to a car which was involved."

The defendant did not object, request a curative instruction or seek a mistrial. Although the defendant claims this is reviewable under *State* v. *Golding,* supra, as being of a "constitutional dimension," he does not claim that we should notice it as plain error under Practice Book § 4185. Under *State* v. *Golding,* supra, the defendant bears the burden of demonstrating that his claim is indeed a violation of a fundamental constitutional right "rather than a common law or statutory claim wearing a constitutional mask." *State* v. *Watlington,* 216 Conn. 188, 193, 579 A.2d 490 (1990). We conclude that, under the circumstances of this case, the prosecutor's reference to "hit and run fatality" came far short of rising to the level of egregious misconduct implicating the denial of the defendant's due process rights.

### III

The defendant claims that he has been deprived of meaningful appellate review due to the loss of the court reporter's notes concerning certain pretrial events, and the inadequacy of efforts to reconstruct the record during two hearings for rectification. The defendant claims that he is unable to "make as strong as possible an argument on [the evidence of the fatal traffic accident] in his appeal," that he has a statutory right to appeal, and that being denied a portion of a transcript is a great hardship, particularly where, as here, appellate counsel was not trial counsel.

Although some difficulty may have been present to appellate counsel in not having all transcripts, the defendant, although perhaps not pleased with the results of the two hearings scheduled for the purpose of reconstructing the missing portions, could not have

felt too prejudiced since he did not file a motion in the trial court for a new trial on this basis. Instead, he relies heavily on *State* v. *Vitale,* 190 Conn. 219, 223–27, 460 A.2d 961 (1983), implying that he should automatically be entitled to a new trial because of the possibility that some error may have occurred that cannot be properly reviewed because appellate counsel may not be aware of it, or cannot be determined by a reviewing court without a full transcript. Our Supreme Court in *Vitale* held that the unavailability of a portion of the transcript does not warrant a new trial unless those proceedings that might be the basis for a claim of error cannot be sufficiently reconstructed for that purpose. Id., 225. Because no effort had been made to reconstruct the missing proceedings in *Vitale,* the matter was remanded to the trial court for that purpose. In the present matter, there were two such attempts made and at the second hearing the record discloses that the defendant was represented by both trial and appellate counsel, thereby giving him a full and adequate opportunity to reconstruct the record.

We conclude that the defendant has shown neither prejudice in the proceedings from the lack of a portion of the transcript, nor insufficiency in the reconstruction of the proceeding to allow for a meaningful appellate review.

The judgments are affirmed.

In this opinion the other judges concurred.