STATE OF CONNECTICUT *v.* JAMES ARTHUR BARNES
(10379)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued April 1—decision released June 9, 1992

*Valerie J. Quinn,* assistant public defender, with whom, on the brief, was *Michael K. Courtney,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *David Holzbach,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). He claims that the trial court improperly (1) excluded the results of his polygraph examination, (2) admitted two state's exhibits that were insufficiently identified at trial, (3) denied his motion to strike the testimony of undercover police detective John Merullo, and (4) failed to find, pursuant to General Statutes § 21a-278 (b) (2), that his mental capacity was significantly impaired at the time of the crimes. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In October, 1989, Detectives Mark Pompano and John Merullo were assigned to the northwest office of the statewide narcotics task force in the capacity of undercover officers. Their assignment was to attempt to buy narcotics in a neighborhood with a high incidence of drug related activities.

During the late afternoon of October 4, 1989, Pompano and Merullo drove through the Beaver and Elm Streets area of Danbury, where they spotted the defendant, whom Merullo had known for about twenty

years. Merullo gave Pompano $100 for the purpose of buying drugs while operating undercover. While Merullo parked their vehicle and watched from a surveillance location, Pompano approached some individuals on a sidewalk and engaged them in conversation. Shortly thereafter, the defendant joined the group. The group members referred to him as "Flat Top." Merullo knew that Flat Top was a nickname of the defendant. When the group broke apart, the defendant asked Pompano if he wanted to buy some cocaine. Pompano said he wanted "a quarter gram." The defendant then retrieved a white, pyramid-type paper fold from his jacket pocket, and Pompano handed him $20 of the money Merullo had provided. Merullo watched the entire transaction from his surveillance post.

Thereafter, the detectives met at a prearranged location and conducted a field test on the contents of the packet. The test showed the substance in the packet to be cocaine. The packet was thereafter taken to the department of health services toxicology laboratory for further tests. At trial, chief state toxicologist Joel Milzoff testified that the contents of the packet tested positive for cocaine.

During a second undercover operation on October 25, 1989, Merullo returned to the same area in Danbury and saw the defendant standing next to a garage. Shortly thereafter, Pompano arrived and engaged in a transaction with the defendant, resulting in the sale to Pompano of one quarter of a gram of cocaine for $25. The narcotic substance was also packaged in a white, pyramid-type paper fold.[1] Merullo also watched this transaction from a distance of about fifty feet.

---

[1] The substance sold to Pompano also field tested positive for cocaine. At trial, Milzoff testified that the substance from both transactions was cocaine.

The defendant's first claim requires little discussion. He argues that the trial court improperly denied his pretrial motion to admit into evidence the results of his polygraph examination. We disagree.

We first note that the trial court conducted a full hearing on the defendant's motion and heard testimony from his expert witness, Victor Kaufman.[2] The court also reviewed the relevant Connecticut law on polygraph evidence before denying the defendant's motion. The defendant now urges us to abandon the well established principle articulated by our Supreme Court that polygraph evidence is inadmissible. See *State* v. *Plourde,* 208 Conn. 455, 471, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989); *State* v. *Miller,* 202 Conn. 463, 484, 522 A.2d 249 (1987). Specifically, the Supreme Court has held that, "[d]ue to their questionable accuracy, the results of a polygraph examination are not admissible either as positive proof or for the purposes of impeachment." *State* v. *Plourde,* supra. Our review of the record discloses no special or distinguishing circumstances, as argued by the defendant, that would lead us to consider a rule different from that enunciated by our highest court. Accordingly, this claim must fail.

Next, the defendant argues that the trial court improperly admitted into evidence certain state's exhibits that were insufficiently identified.

The following facts are germane to this issue. It is uncontested that during the trial, when Pompano and Merullo testified about state's exhibits B1 and C1, which represented the packets of cocaine sold to Pompano on October 4 and October 25, 1989, respectively,

---

[2] At the pretrial hearing, Kaufman testified that the defendant had truthfully responded to certain questions concerning his involvement in the sale of cocaine. Kaufman testified that the defendant had told the truth in responding that he had not sold cocaine on the dates in question or at any other time.

they initially misidentified the exhibits. After their initial testimony, it was clear that there was confusion with respect to the correlation between exhibits and the dates on which they were seized by the police.[3] Upon being recalled to testify, however, Pompano and Merullo clarified their earlier testimony to the court's satisfaction. The court then denied the defendant's motion to exclude the evidence at issue.

The essence of the defendant's argument here is that the testimony of the state's witnesses supporting the identification and chain of custody of the exhibits was inherently unreliable and, therefore, the state failed to establish a sufficient basis for the admission of this evidence. This claim has no merit.

It is axiomatic that we afford a trial court's rulings on the admissibility of evidence great deference. *State* v. *Sharpe,* 195 Conn. 651, 658–59, 491 A.2d 345 (1985). We will not disturb such rulings absent a showing of a clear abuse of the trial court's discretion. *State* v. *Moye,* 214 Conn. 89, 96, 570 A.2d 209 (1990). Our review of the record leads us to conclude that the trial court did not abuse its discretion in finding that the state had sufficiently laid a proper foundation for the admission of the exhibits and that, in addition, the state had sufficiently established both their identification and chain of custody.

When recalled to the witness stand, Pompano and Merullo testified that their earlier misidentification of exhibits B1 and C1 was attributable to the fact that they had not noted the dates written on the different evidence tags of the two exhibits. After the prosecutor questioned the witnesses again, the trial court was satisfied that no fatal misidentification or problem with

[3] It is evident from a review of the record that a mix-up in the identification of the exhibits B1 and C1 occurred as a result of the prosecutor's confused presentation of the evidence rather than any fatal contradiction in the police testimony.

the chain of custody existed.[4] Accordingly, the questions concerning the weight to be given the evidence and the truthfulness of the detectives who obtained it were properly submitted to the jury as finders of fact. We note that there is no claim here that the evidence was tampered with in any fashion or that the trial court improperly instructed the jury as to its duty regarding the consideration of evidence. The defendant's claim boils down to a contention that an initial confusion or misidentification of certain evidence cannot later be cleared up and clarified by the same witnesses. We reject this argument under the circumstances of this case. Because we find no basis on which to conclude that the trial court abused its discretion with regard to the physical evidence at issue, we find nothing improper in the court's actions. See *State* v. *Pollitt,* 205 Conn. 61, 92, 530 A.2d 155 (1987).

As a corollary to his challenge to the state's exhibits, the defendant argues that because exhibits B1 and C1 should have been excluded, the court wrongfully denied his motion for judgment of acquittal, which he based on the insufficiency of the evidence. Because of our treatment of the claim concerning those exhibits, which comprised the crucial physical evidence presented against the defendant, we need not reach this issue.

The defendant next contends that the trial court was incorrect in ruling that Merullo's field notes were not "statements" within the meaning of Practice Book § 749,[5] and therefore were not subject to disclosure pur-

---

[4] Besides Pompano and Merullo, the state presented as witnesses Sergeants Joseph Foehr and William McGuire of the state narcotics task force, chief toxicologist Milzoff, and Inspector Robert Bloomquist of the task force with respect to the identification and chain of custody of the evidence.

[5] Practice Book § 749 provides: "The term 'statement' as used in Sec. 748 means: (1) A written statement made by a person and signed or otherwise adopted or approved by him; or (2) A stenographic, mechanical, elec-

suant to Practice Book § 752.[6] He argues that the destruction of Merullo's "statements" required the court to strike the detective's entire testimony, and that the trial court wrongfully denied the motion to strike that testimony. Again, we disagree.

These additional facts are necessary to the resolution of this claim. Merullo prepared two written reports as a result of his investigation of the October 4 and October 25, 1989 undercover operations. The state duly provided copies of these reports to the defendant. During a voir dire of Merullo, however, he testified that he also had dictated into a tape recorder the "time periods" of certain incidents during the investigation. These time periods indicated, for example, when the undercover officer making the buy arrived at a designated location, and when the buy actually occurred. He further testified on redirect examination before the jury that (1) the tapes assisted him in completing his written report, (2) the written reports accurately reiterated the time periods reflected on the tapes, and (3) the tapes had since been destroyed.

In response to this information, the defendant asked that Merullo's entire testimony be stricken as a sanction for destroying the tapes. The trial court refused, finding that there was "no statement on the tapes" and that the recordation of time periods was tantamount to the making of "scrap notes." We agree with the trial court.

"In making the determination of whether the field notes constituted a statement, 'the trial court exercises

trical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[6] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

broad discretion . . . and its findings will be disturbed only if they are clearly erroneous. (Citations omitted.)' *State* v. *Black,* 23 Conn. App. 241, 244, 579 A.2d 1107 (1990)." *State* v. *Torres,* 24 Conn. App. 316, 329, 588 A.2d 232, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991). A police officer's field notes may be subject to disclosure provided they meet the qualifications of the alternate definitions found in the two subsections of Practice Book § 749. *State* v. *Belle,* 215 Conn. 257, 266, 576 A.2d 139 (1990); *State* v. *Monteeth,* 208 Conn. 202, 216, 544 A.2d 1199 (1988). Here, the defendant claims that the tape recorded time periods were statements within the meaning of one of the alternate definitions of that term. Nowhere in the presentation of this appeal, however, is there evidence that these recorded times were substantially verbatim accounts of the incidents under investigation. Indeed, the time periods were included in the written verbatim accounts that were in fact turned over to the defendant. The record clearly does not support the claim that these taped time periods were anything more than undiscoverable field notes. Finally, we note that the defendant makes no claim that these recordings contained any exculpatory material relevant to the issue of misidentification of the physical evidence. We therefore conclude that there is nothing in the record to suggest that the trial court's resolution of this entire question was clearly erroneous.[7]

The defendant's final argument is that the trial court incorrectly found that for the purposes of General Statutes § 21a-278 (b) (2), his mental capacity was not significantly impaired at the time of the crimes.

The defendant was convicted of two counts of violating General Statutes § 21a-278. Pursuant to that stat-

---

[7] We note that even if we were to consider the time periods to be statements under the definition in the rules of practice, we could not conclude that the destruction of the tape recording without bad faith was harmful to the defendant in any way.

ute, the penalty for each violation is that "for a first offense [the person] shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense [the person] shall be imprisoned not less than ten years nor more than twenty five years. . . ." General Statutes § 21a-278 (b). The statute further provides: "The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution." General Statutes § 21a-278 (b). Pursuant to General Statutes § 21a-269,[8] the burden of proving an exemption from liability, such as mental impairment, rests with the defendant. *State* v. *Hart*, 221 Conn. 595, 608, 605 A.2d 1366 (1992).

On May 29, 1991, prior to sentencing, the trial court permitted the defendant to present evidence of mental impairment pursuant to § 21a-278 (b) (2). The defendant proceeded to present as an expert witness Lloyd Dawe, a psychiatrist who testified, in essence, that during the time of the offenses the defendant suffered from paranoia. Dawe also testified that the defendant was not a "severe paranoic," and that paranoia is "the commonest of all psychiatric conditions [and] is present in virtually everyone." After acknowledging that he had not examined the defendant until more than a year after the commission of the offenses, Dawe further qualified his professional assessment by stating that the defendant understood the con-

---

[8] General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exception contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

cepts of right and wrong, and that if he had been selling narcotics, he would certainly have been aware of what he was doing. The state cross-examined Dawe but presented no evidence of its own.

Given this evidence, the trial court rejected the defendant's contention that his mental capacity was significantly impaired at the time of the offenses and that, as a result, he should not receive the mandatory minimum sentence. The court specifically found that there was insufficient evidence to warrant a finding that the defendant's mental capacity was significantly impaired at the time of the offenses.

The defendant now argues that in enacting General Statutes § 21a-278 (b), the legislature clearly intended to exempt certain classes of people from the mandatory minimum sentence at issue here. He urges us to find that it was clearly erroneous for the trial court to refuse to find that his mental capacity was impaired. The defendant further suggests that once he produces evidence of impaired mental capacity, the burden shifts to the state to disprove it beyond a reasonable doubt.

At the outset, we note that it is well established that there is no need to search for legislative intent when a statute's language is clear and unambiguous. *State v. Guckian,* 27 Conn. App. 225, 241, 605 A.2d 874 (1992) (en banc). What the defendant overlooks is that suspension of the mandatory minimum sentence when a defendant meets the requirements of subdivisions (1) or (2) of General Statutes § 21a-278 (b) is purely permissive, and that this aspect of the statutory language is clear and unambiguous on its face. The statute clearly states that the court "may" suspend execution of the sentence if it finds, pursuant to subdivision (2), significant impairment of the defendant's mental capacity. Moreover, subdivisions (1) and (2) apply to the sentencing phase, where guarantees to a convicted defendant

are few and well defined. One such guarantee certainly is not that a trial court be mandated to accept and give credence to *any* evidence offered by a defendant under this statute.

In this case, after hearing testimony from the defendant's psychiatrist, the court found that there was insufficient evidence from which it could make a factual finding of significantly impaired mental capacity. See *State* v. *Hart,* supra, 608–609. "Under familiar principles of appellate review, a trial court's factual finding will not be reversed or modified unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . ." (Citations omitted; internal quotation marks omitted.) *Capital Consulting Group, Ltd.* v. *Rochman,* 218 Conn. 396, 401, 589 A.2d 877 (1991), quoting *DiBella* v. *Widlitz,* 207 Conn. 194, 198, 541 A.2d 91 (1988). " 'The issue is not whether the trial court could have reached a different conclusion but whether the conclusion which it did reach is clearly erroneous.' " *Capital Consulting Group, Ltd.* v. *Rochman,* supra. Having considered the psychiatrist's testimony, we cannot find that it was clearly erroneous for the court to determine that there was insufficient evidence to make a factual finding regarding significant mental impairment.

Because we cannot disturb this finding, there is no need to reach the second part of the defendant's argument on this issue, which involves whether and in what manner the state must negate evidence that the defendant suffers from significant mental impairment at the time of the crime.

The judgment is affirmed.

In this opinion the other judges concurred.