[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition requesting habeas corpus relief from allegedly illegal confinement resulting from a judgment of conviction, after a jury trial, of two counts of sale of cocaine, in violation of General Statutes 21a-278(b), for which the petitioner received a total, effective sentence of six years to serve. The petitioner claims his confinement is illegal because his trial counsel rendered ineffective assistance.
The petitioner was arrested on March 28, 1990, for two sales CT Page 1321 of cocaine to an undercover police officer occurring on October 4, 1989, and October 25, 1989, respectively. These sales allegedly transpired near the intersection of Beaver and Elm Streets in Danbury. The petitioner pleaded not guilty to the charges and elected a jury trial. On April 2, 1991, the taking of evidence at his trial began. On April 10, 1991, the jury found the petitioner guilty on both counts. On May 29, 1991, the petitioner was sentenced to two, concurrent six year prison terms. The judgment of conviction was affirmed on appeal, State v. Barnes, 27 Conn. App. 713
(1992).
The petitioner asserts that his trial attorneys, Assistant Public Defenders Michael Courtney and Valerie Quinn, rendered ineffective assistance by inadequately preparing for trial which resulted in the failure to produce sufficient evidence of the petitioner's likeness in appearance to his brother, Leon Barnes, and to call Donald Mazza as a defense alibi witness.
Concerning these issues the court finds the following facts:
Shortly after the petitioner's arrest, Attorney Courtney was appointed to represent the petitioner. The petitioner informed Courtney that he was innocent of the charges, but, because of the delay between the alleged sales and his arrest, he had no specific recollection of his whereabouts on the relevant dates. It should be noted that this lack of recollection persisted through to trial (Petitioner's Exhibit A-5, p. 102). Faced with this problem, Courtney attempted to uncover alibi evidence to refute the state's case. Courtney obtained from the petitioner names of persons who might conceivably recall where the petitioner was at the times of the drug sales. Courtney and his investigator interviewed every person whose identity was supplied, over time, by the petitioner. Fifteen to twenty potential witnesses were interviewed in this endeavor, but none could assist in establishing the petitioner's alibi defense.
The prosecution case against the petitioner was a strong one. Two members of the Statewide Narcotics Task Force, including the undercover officer posing as the prospective drug purchaser, positively identified the petitioner as the person who they observed as committing the two sales of cocaine. One of these officer at the time had known the petitioner for twenty years through numerous contacts with the petitioner in his capacity as a Danbury police officer and also because the petitioner had been involved in an alleged physical altercation with that officer's CT Page 1322 brother years earlier (Petitioner's Exhibit A-4, pp. 95 and 98 through 101). Also, the undercover officer who purchased the narcotics had heard bystanders in the area of the sales refer to the seller as "Flattop" (Petitioner's Exhibit A-4, p. 38). This appellation is and was the petitioner's nickname.
Given the strength of the prosecution's case and the absence of alibi evidence, Courtney suggested that the petitioner submit to a polygraph examination. The petitioner agreed and took such an examination before a private polygrapher. The results of this test were favorable to the petitioner but only slightly so. Courtney related the results to the petitioner and explained that the weak results would be insufficient to overcome longstanding case law refusing to admit polygraph results at trial. Courtney's prediction proved accurate, State v. Barnes, supra, 716.
The prosecuting authority offered to recommend a suspended sentence in exchange for guilty pleas. Courtney strongly urged the petitioner to accept this offer. The petitioner bristled at this recommendation and called Courtney a "serpent." Courtney felt that he had lost the petitioner's confidence in him and arranged for another public defender, Attorney Quinn, to take over the petitioner's case. Courtney fully briefed Quinn regarding the pretrial efforts which had been made to that point.
Quinn thoroughly familiarized herself with the petitioner's cause, including re-interviewing a number of potential witnesses. She filed eleven pretrial motions including the unsuccessful attempt to gain admission of the polygraph test results. She successfully moved to suppress evidence regarding a photo array, and restricted the use of the petitioner's previous felony history. The trial judge commented that he had never encountered so many pretrial motions in one case before (Petitioner's Exhibit A-1, p. 3).
As the petitioner would think of new, potential alibi witnesses, his public defenders would investigate each lead. These leads proved unproductive, however. Courtney, Quinn, and their investigator all spoke to Donald Mazza at various times before the petitioner's trial. At these times, Mazza was unable to provide support for the petitioner's alibi defense. Also, the public defenders investigated whether any similarity in appearance shared by the petitioner and his brother, Leon, could be exploited to cast a reasonable doubt on the police identification of the petitioner as the drug dealer. Both Courtney and Quinn spoke to Leon who CT Page 1323 denied the mixup. Courtney and Quinn opined that Leon resembled the petitioner but not strikingly so. This line of defense was conclusively undercut, however, when Quinn learned that Leon was incarcerated on one of the relevant dates and could not have been present the sale so as to be confused with the petitioner.
Based on the above information, Quinn, as a tactical decision, declined to call either Mazza or Leon Barnes to testify. She did present other witnesses at trial, including the petitioner's sister, who testified regarding the physical similarity between her brothers and provided the only photograph of Leon which was available.
During the sentencing phase of the case, Quinn asked the court to allow Mazza to address the court regarding the petitioner's good character. Mazza informed the court that he then recollected that he was with the petitioner on the pertinent dates. Mazza also testified at the habeas hearing regarding the habit or custom of his rehearsing with the petitioner on Wednesdays until around 4:15 p. m. to prepare for upcoming musical performances. He also testified that these rehearsals were noted in a datebook he maintained. These entries, however, lack specific mention of the petitioner. Further, on both of the relevant dates, the rehearsals ended early enough to permit the petitioner to leave the rehearsal site and be at the site of the alleged sales without the necessity of unreasonable speed.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different, Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v. Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms, Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Id. CT Page 1324
At the habeas hearing neither party introduced expert testimony regarding the professional standards or norms pertaining to the issues at hand. The court holds that the petitioner has failed to meet his burden of proving that his trial attorney's representation fell below any objective standard of reasonableness. Trial counsels' performance, both pretrial and at trial, struck the court as thorough, thoughtful, and as holding the petitioner's best interests foremost in mind. While it is incumbent on a trial lawyer to conduct a prompt and thorough investigation, counsel need not investigate every evidentiary possibility, Ostolaza v. Warden, supra, 765.
In the present case, the petitioner's defense attorneys spoke to Mazza before trial on more than one occasion, and he was unable to provide usable, alibi evidence. His post verdict assertions were neither foreseeable nor especially helpful because they failed to establish the petitioner's presence away from the crime scene at the relevant hours.
As to the reluctance to call Leon Barnes to the stand Quinn testified, at the habeas hearing, that she decided that Leon's testimony would generate more harm to the defense case than good. The court agrees with this assessment. Because Leon was confined during one of the sales, he was conspicuously innocent of engaging in that crime. To have attempted to shift the blame to Leon may very well have engendered, in the minds of the jurors, the sense that the defense was desperately grasping at straws or created a negative reaction in the jurors by pointing an accusatory finger at an obviously innocent third party.
As to the second, or prejudice, prong of the Strickland test, the petitioner has also failed to meet his burden of proof. In order to satisfy this component of the test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different, Levine v. Manson, 195 Conn. 636, 640 (1985). Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner, 222 Conn. 444, 454
(1992). The prosecution case overwhelmingly identified the petitioner as the drug dealer on the dates in question. Two law enforcement officers positively identified him as such on two occasions. One officer had face to face contact with the petitioner on both dates, and the other officer had had contact CT Page 1325 with the petitioner for over twenty years both professionally and personally. See, State v. Ruffin, 206 Conn. 678, 685 (1988). The dealer was known by an unusual nickname which belonged to the petitioner. These factors convince the court that there is no reasonable probability that the testimony of Leon Barnes or Mazza would have affected the outcome of the petitioner's criminal trial. In the court's view, the determination of the petitioner's guilt at trial was a reliable one.
For the above reasons, the petition is dismissed.
Sferrazza, J.